UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **HELEN MARIE LEWIS** | **CIVIL ACTION NO.** |
| **VERSUS** | **20-345-EWD** |
| **COMMISSIONER OF SOCIAL SECURITY** | **CONSENT CASE** |

## RULING AND ORDER

Helen Marie Lewis ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] After considering the arguments[2] and based on the applicable standard of review under 42 U.S.C. § 405(g), the administrative law judge applied the correct legal standards and substantial evidence supports the Commissioner's decision. Accordingly, the Commissioner's decision will be affirmed.

**I.   PROCEDURAL HISTORY**

On December 18, 2017,[3] Plaintiff filed an application for SSI and DIB alleging disability beginning October 1, 2015 due to vertigo, a heart problem, hearing loss, anxiety disorder, high blood pressure, carpal tunnel and vision problems.[4] At the time of the applications, the Commissioner determined that the date that Plaintiff will last meet the insured status requirements

---

[1] *See* AR pp. 144-163 (application for SSI); and AR pp. 1-5 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)])."
[2] Plaintiff has filed a Brief in Support of Appeal (R. Doc. 16), the Commissioner has filed an Opposition Memorandum (R. Doc. 18), and Plaintiff has filed a Reply (R. Doc. 19).
[3] Plaintiff's applications were signed on November 29, 2017. AR pp. 145, 157. Plaintiff's SSI application was accepted on December 18, 2017. AR p. 158.
[4] *See* AR pp. 10, 58-59, 65-66, 77, 191, 198, 217 (noting disability onset date of October 1, 2015 and/or last date of work as September 30, 2015); *but cf.* AR pp. 145, 156 (SSI and DIB applications noting disability onset date of June 1, 2014) and AR pp. 164, 167 (internet application summaries listing start date of disability of June 1, 2014, which is stricken through and includes a handwritten date of "September 1, 2015 (H.L.)." Because Plaintiff's Brief in Support of Appeal and the Commissioner's decision, as well as most other documents in the record, use the October 1, 2015 disability onset date, so too will the Court. *See* R. Doc. 16, p. 1, and AR p. 10.

of the Social Security Act is December 31, 2019.[5] Both claims were initially denied on March 27, 2018.[6] Thereafter, Plaintiff timely requested a hearing before an ALJ.[7] A hearing was held on May 7, 2019, at which Plaintiff, who was represented by counsel, testified.[8] Vocational Expert ("VE") Wendy P. Klamm ("Klamm") also testified.[9] On July 15, 2019, the ALJ issued a notice of unfavorable decision.[10] Plaintiff timely filed a counseled request for review by the Appeals Council.[11] On April 3, 2020, the Appeals Council denied Plaintiff's request for review.[12]

On June 5, 2020, Plaintiff timely filed her Complaint in this Court.[13] Accordingly, Plaintiff exhausted her administrative remedies before filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[14]

## II.   THE ALJ'S DECISION

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[15] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[16] In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically

---

[5] AR p. 12. Plaintiff's earnings history is at AR pp. 175-188. The date last insured is not at issue in this appeal.
[6] AR pp. 64, 71. Plaintiff was notified of the decision by letters dated March 27, 2017. AR pp. 77-80.
[7] AR pp. 81-83. Plaintiff requested the hearing on May 4, 2018. *Id*.
[8] AR pp. 72-73, 136-139 (fee agreement and appointment of representatives); AR pp. 101-123 (notice of hearing); AR pp. 23-53 (transcript of hearing).
[9] AR pp. 240-243 (Klamm's resume).
[10] AR pp. 7-21. The Court Transcript Index incorrectly lists the date as "July 10, 2019."
[11] AR pp. 140-143; AR pp. 250-252 (Plaintiff's brief to the Appeals Council submitted through counsel).
[12] AR pp. 1-4.
[13] R. Doc. 1.
[14] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[15] 20 C.F.R. § 404.1505; 20 C.F.R. § 416.905.
[16] 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in 20 C.F.R. Subpart P, Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[17]

The burden rests upon the claimant to prove disability throughout the first four steps of this five-step process.[18] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[19] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[20]

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the October 1, 2015 alleged onset of disability.[21] At the second step, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, status post stent placement, hypertension, and sciatica, which significantly limited her ability to perform basic work activities.[22] The ALJ found that Plaintiff's anemia, carpal tunnel syndrome of the right wrist, and age related cataracts were non-severe impairments because they only caused minimal limitations on Plaintiff's ability to perform basic work activities.[23] Likewise, the ALJ found that Plaintiff's generalized anxiety disorder was non-severe because, after applying the "four areas of mental functioning"—*i.e.*, the "paragraph B" criteria listed in 20 C.F.R. Subpart P, Appendix 1,

---

[17] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[18] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[19] 20 C.F.R. § 404.1520(g)(1).
[20] *Muse*, 925 F.2d at 789.
[21] AR p. 12.
[22] AR pp. 12-13.
[23] AR pp. 12-13.

12.00(E),[24] the ALJ determined that Plaintiff had only "mild limitations" in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[25] At the third step, the ALJ found that Plaintiff's impairments, considered alone or in combination, do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), including Section 4.40 (Ischemic heart disease) or any other listed impairment.[26]

Next, the ALJ found that Plaintiff had the following RFC[27]:

> to lift and carry a maximum of 20 pounds occasionally. She can lift and carry a maximum of ten pounds frequently. She can stand and walk up to six hours out of an eight-hour workday. She can sit for up to six hours out of any eight-hour workday. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never be exposed to workplace hazards such as dangerous moving machinery and unprotected heights. She should avoid even moderate exposure to temperature extremes.[28]

Based on Plaintiff's RFC, age, education, and employment history, and the testimony of the VE,[29]

---

[24] The revised "paragraph B" criteria were in effect when Plaintiff's applications were filed and when the Appeals Council issued its Notice of Action on April 3, 2020. AR p. 1. *See Williams v. Berryhill*, No. 16-01367, 2018 WL 1006057, at *9 (W.D. La. Jan. 17, 2018) (*citing* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5431732 (Sept. 26, 2016) and explaining that "[t]he SSA stated that it will use the new rules on or after their effective date in any case in which it makes a determination or decision. The SSA expects the Federal courts will review its final decisions using the rules that were in effect at the time it issues the decisions.").
[25] AR p. 13.
[26] AR pp. 13-14. Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment, she must demonstrate that it meets all the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990), *superseded by statute on other grounds* (citations omitted); 20 C.F.R. § 404.1525; 20 C.F.R. § 416.925.
[27] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1545, 20 C.F.R. § 416.945.
[28] AR p. 14.
[29] AR pp. 49-52. The VE classified Plaintiff's past work as "hand packager and DOT 920.58-018, medium, unskilled, SVP 2; housekeeping cleaner, DOT 323.687-014, light, unskilled, SVP; and a composite job of fast food worker, DOT 311.412.010, light, unskilled, SVP and a cook helper, DOT 317.687-010, medium, unskilled, SVP 2." *Id*. at pp. 49-51. In response to a question from the ALJ asking the VE to assume Plaintiff had the above RFC, the VE testified that Plaintiff would be able to do return to her past work—namely, housekeeping cleaner. *Id*. at p. 51.

4

the ALJ determined that Plaintiff is "capable of performing past relevant work as a housekeeper/cleaner."[30] Accordingly, at step four, the ALJ found that Plaintiff was not disabled from October 1, 2015 through July 15, 2019 (the date of the ALJ's decision).[31] The Appeals Council denied review of the ALJ's decision that Plaintiff was not disabled.[32]

### III. PLAINTIFF'S ALLEGATIONS OF ERROR

On appeal, Plaintiff presents the following assignments of error: 1) The ALJ's RFC determination is unsupported by substantial evidence as he failed to develop the record before crafting an RFC based on the ALJ's own misguided interpretation of insufficient notations; and 2) the ALJ's subjective complaint analysis is unsupported by substantial evidence.[33]

### IV. LAW AND ANALYSIS

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[34] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[35]

When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[36] Substantial evidence is that which is relevant and sufficient for a reasonable

---

[30] AR p. 16.
[31] AR p. 16.
[32] AR pp. 1-3.
[33] R. Doc. 16, p. 1.
[34] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[35] *Bruno, M v. U.S. Commissioner, Social Sec. Admin.,* No. 19-00886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom., Bruno v. Commissioner, Social Sec. Admin.*, No. 19-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020), *citing Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[36] *Richardson v. Perales*, 402 U.S. 389-90, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995) (*superseded by statute on other grounds, see Stancle v. Colvin,* No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016).

mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[37] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[38] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence supports the decision, it must be affirmed even if there is evidence on the other side.[39] This Court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[40]

Plaintiff takes issue with the fact that the ALJ did not sufficiently discuss Plaintiff's complaint of dizziness, did not properly evaluate Plaintiff's subjective complaints under SSR 16-3p, and did not obtain a consultative exam ("CE") to assist in assessing Plaintiff's RFC and otherwise develop the record.[41] As explained below, the ALJ applied the correct legal standards, and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, the Commissioner's decision will be affirmed.

> A. **The ALJ's Assessment of Plaintiff's Limitations and Functionality Sufficiently Accounts for Plaintiff's Complaint of Dizziness, Properly Applies the Subject Complaint Analysis, and is Supported by Substantial Evidence**

Plaintiff's first and second assignments of error overlap to some extent. Essentially, Plaintiff complains that because the ALJ did not adequately develop the record and did not properly consider Plaintiff's subjective complaints, the RFC determination is unsubstantiated. Specifically, Plaintiff contends that the ALJ's consideration of her dizziness complaints, as well as her subjective complaints about other symptoms, was not sufficient, and that the ALJ's findings

---

[37] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[38] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), *quoting Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).
[39] *Masterson*, 309 F.3d at 272; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[40] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[41] R. Doc. 16, pp. 6-11.

6

on these issues are not supported by substantial evidence.[42] For example, Plaintiff argues that the ALJ does not explain the basis for the determination that Plaintiff's dizziness could be accounted for with a limitation to only occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. Further, Plaintiff contends that the "ALJ declined to mention the appointments that actually document with any significance Plaintiff's dizziness issue."[43] Similarly, Plaintiff claims that the ALJ's subjective analysis is insufficient and/or flawed because (1) the ALJ did not consider certain factors listed in 20 C.F.R. §416.929(c)(3)[44] and (2) the ALJ "relied overwhelmingly on the medical evidence," rather than discussing any of the reasons in SSR 16-3p[45] why Plaintiff's medical records may be devoid of treatment.[46]

---

[42] R. Doc. 16, pp. 6-8, 11-12.
[43] *Id*.
[44] 20 C.F.R. § 416.929(c)(3) states:
> Consideration of other evidence. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information in your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments, or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistent of your symptoms…

[45] SSR 16-3p(d)(d) provides that "[i]n addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use" the following factors: "(1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an induvial uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms."

[46] R. Doc. 16, pp. 11-12. Relying on *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986), Plaintiff also argues that the ALJ erred by not making a specific determination that "Plaintiff can persist [or sustain] at a light job." R. Doc. 16, p. 10; *see also* AR pp. 28-29 (Plaintiff's counsel noting that Plaintiff's impairments "make[] her unable to sustain the duties of a job under Step 4 of the sequential process"). However, more recent Fifth Circuit authority makes clear that *Singletary* does "not require…separate findings on 'obtaining' and 'maintaining' a job in every case." *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). "Instead, *Singletary* findings are appropriate where there is a 'situation which, by its nature, the claimant's [impairment] waxes and wanes in its…disabling symptoms.'" *Hollinger v. Kijakazi*, --- F. App'x ---, 2021 WL 3775376, at * (5th Cir. 2021), *quoting Frank*, 326 F.3d at 619, 621 (emphasizing "cases in which a person could work for short periods, but could not hold a job."). This is not one of those cases, and the ALJ did not err by failing to make a separate finding that Plaintiff could obtain *and* maintain employment. Here, similarly to *Hollinger*, some of Plaintiff's chief complaints—dizziness/equilibrium disorder, hypertension and hearing loss—were diagnosed prior to the alleged onset date (*see* AR pp. 470-77) and were, therefore, stable limitations, which have persisted for years, and which render *Singletary* of no moment. *See Hollinger*, 2021 WL 3775376, at *2 (explaining that "[t]he stable nature of [claimant's] limitations, which have persisted for years, renders *Singletary* of no moment").

Plaintiff's argument—that the ALJ dismissed her complaints of dizziness by "only" mentioning "intermittent dizziness" and "declin[ing] to mention" any record evidence that "actually document[s] with any significance Plaintiff's dizziness issue"[47]—lacks merit. First, the ALJ is not required to discuss every piece of evidence.[48] Second, the ALJ did, in fact, consider Plaintiff's reported dizziness and the related medical evidence, and she included limitations in Plaintiff's RFC based on Plaintiff's reported dizziness.[49] Third, the ALJ's discussion of Plaintiff's reported dizziness is consistent with the evidence of record.[50] It does not appear that Plaintiff

---

[47] R. Doc. 16, pp. 7-8. *See also* AR p. 15, *citing* AR 609.
[48] *See Reid v. Saul,* No. 18-4562, 2019 WL 6970763, at *18, n. 197 (S.D. Tex. Nov. 20, 2019), *report and recommendation adopted,* No. 18-4562, 2019 WL 6910143 (S.D. Tex. Dec. 19, 2019) ("In his response, Plaintiff argues that the ALJ ignored certain evidence and discussed only the evidence favorable to his determination. The court reminds Plaintiff that the ALJ is not required to discuss every single piece of evidence…. *See Giles v. Astrue*, 433 F. App'x 241, 251 (5th Cir. 2011) (unpublished) ('[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record[.]')….").
[49] *See* AR pp. 14-15 (noting that Plaintiff "testified that she becomes dizzy frequently," and noting Plaintiff reported "intermittent dizziness" in a January 9, 2018 medical appearance), pp. 16 (explaining that Plaintiff's "[h]ypertension and any associated symptoms of dizziness limit her to occasionally climbing ramps and stairs and never climbing ladders, ropers, or scaffolds."). Plaintiff does not point to records which she contends show more than intermittent dizziness. *See e.g.*, R. Doc. 16, p. 7 (referencing a September 29, 2016 record from Dr. Sharp which documents Plaintiff's reports of "intermittent dizziness") and p. 8 (referencing a June 19, 2017 record from NP Landry noting that Plaintiff's MRI was normal but that Plaintiff's continued to have dizziness and "feeling off balance at times.").
[50] *See, e.g.*, AR pp. 470-473 (a May 19, 2014 note from Dawn Sharp, MD, (1) stating that Plaintiff "feels unsteady and off balance. No true vertigo. She has been seen by urgent care clinic Cindy emergency room. She is on meclizine which helps. She does suffer from lifelong allergic rhinitis with intermittent ear popping a[nd] left ear pain. Her equilibrium is slightly off, even with sitting. Not position evoked or with standing," (2) concluding that "dizziness could be related to allergic rhinitis…Recommend daily Zyrtec and meclizine when necessary," and (3) referring Plaintiff to "LSU ENT Vista clinic for further assessment and management of her dizziness."); AR pp. 465 (a September 2016 note from Dr. Sharp noting, "Intermittent dizziness, was seen in the ER or urgent care somewhere, given meclizine. For years now she has been on meclizine twice a day. Her symptoms of dizziness go away with that however if not on, she feels lightheaded. No true vertigo episodes. No slurred speech. No history of head trauma…"); AR pp. 439 (a June 19, 2017 note by Nurse Practitioner, Janet Landry ("NP Landry"), stating, "[Plaintiff complains of] dizziness and feeling off balance at times. She had an MRI (ENT) which was normal. She takes meclizine and this helps."); AR pp. 562-565 (a May 8, 2018 note from NP Landry noting, in relevant part, "15. Vertigo. Folate [and] Vitamin B12); AR pp. 553-556 (a June 25, 2018 note by Nurse Practitioner, Lacy Millet ("NP Millet"), noting "[Plaintiff] also complains of having dizziness that is [sic] been going on for quite some time. She states even though she takes the meclizine she continues to have dizziness. Sometimes she feels lightheaded. She was recently started on hydrochlorothiazide about a year ago. She reports she also sees ENT in the past of issues with her ear…She does state a lot of time she gets dizziness when she is changing positions fast. She denies any syncope or any recent fall." Based on these statements, Plaintiff was advised to "hold the hydrochlorothiazide for the next week to see if this is a possible cause of her dizziness and lightheadedness," and instructed to follow up in 1 week for revaluation.).

complained of dizziness after the June 25, 2018 visit.[51] Plaintiff also testified at the hearing that medication helped her dizziness,[52] which is consistent with her medical records.[53]

Relatedly, the ALJ analyzed Plaintiff's subjective complaints as required by the applicable regulations.[54] Under SSR 16-3p, an ALJ analyzes a claimant's subjective complaints under a two-step process. First, the ALJ determines whether there is a medically determinable impairment ("MDI") that could reasonably be expected to produce the plaintiff's alleged symptoms.[55] Then, the ALJ evaluates the intensity and persistence of the plaintiff's symptoms to determine the extent to which the Plaintiff's symptoms limit her ability to perform work-related activities.[56]

Contrary to Plaintiff's argument that the ALJ rejected Plaintiff's subjective complaints and "overwhelmingly relied on the medical evidence," the ALJ provided a summary of the record evidence and provided an explanation of why she determined that Plaintiff's reported symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[57] Substantial evidence supports this conclusion. As previously explained, the medical records do not provide objective support for Plaintiff's subjective complaints that her dizziness is severe. In the instances where Plaintiff complains of dizziness, the medical records seem to suggest that the dizziness is generally controlled with medication, and there are no complaints of dizziness in her medical records after Plaintiff's June 25, 2018 appointment.[58] The record evidence also does not indicate any syncope—*i.e.*, temporary loss of consciousness—or fall associated with her dizziness,

---

[51] S*ee* AR p. 547 (a July 16, 2018 note from NP Millet which does not reference that Plaintiff was complaining of dizziness at that visit). Nor was dizziness a complaint at Plaintiff's October 2, 2018 visit (*see* AR p. 540) or January 7, 2019 visit (*see* AR p. 532). Plaintiff's summary of the relevant medical evidence does not indicate treatment for dizziness after June 2018. See R. Doc. 16, pp. 2-5.
[52] AR p. 37 ("The medicine just, I guess, helps it make it, you know, I guess more bearable, I guess.").
[53] *See* fn. 50, *supra*.
[54] AR pp. 14-16, *citing* 20 C.F.R. §§ 404.1520c, 404.1529, 416.920c, 416.929, and SSR 16-3p.
[55] SSR 16-3p.
[56] *Id*.
[57] AR pp. 14-16 (discussing Plaintiff's symptoms and the record evidence).
[58] *See* fn. 50.

and Plaintiff denied such symptoms at her June 2018 appointment. Nonetheless, the ALJ considered Plaintiff's self-report of dizziness to the level supported by the medical records and included restrictions in Plaintiff's RFC to account for that limitation.[59]

Plaintiff's argument, that the ALJ failed to follow SSR 16-3p because she did not consider possible reasons for infrequent or absent treatment, fares no better. Plaintiff suggests that the ALJ should have extrapolated from Plaintiff's testimony that, because Plaintiff lives with her sister, Plaintiff was financially limited in housing so that she was also financially limited in obtaining medical treatment.[60] First, the records do not establish that Plaintiff was particularly limited in her ability to receive medical treatment. To the contrary, Plaintiff had consistent treatment, sometimes seeing providers multiple times within the same month if she felt her symptoms warranted it,[61] and there are several notes of treatment from various providers for various ailments between the alleged onset of disability (October 2015) and the ALJ's decision in July 2019.[62] Although one treatment note from September 2016 indicates that Plaintiff did not initially receive follow up treatment at LSU ENT (ordered May 19, 2014)[63] because of insurance issues, that note also states that Plaintiff had Medicaid by that time and was seeking to reestablish treatment.[64] Additionally, to the extent Plaintiff wanted to further develop her arguments about limitations on treatment, she was represented at the hearing before the ALJ, and her counsel could have asked her questions regarding any financial limitations that led to a lack of treatment. This was not done.

---

[59] It is not clear whether Plaintiff argues that the ALJ should have weighed other evidence differently in addition to the evidence regarding Plaintiff's dizziness/vertigo. As Plaintiff's briefing primarily focuses on dizziness, this Ruling and Order does as well.
[60] R. Doc. 16, p. 12.
[61] *See* AR pp. 326 and 635 (two medical appointments in October 2016); pp. 428 and 491 (ER visit and office visit in July 2017); and pp. 479 and 608 (two medical appointments in January 2018).
[62] *See* AR pp. 304, 316, 318, 322, 324, 326, 330, 625, 635 and 650 (2016 notes of treatment, lab work, and office visits); pp. 332, 428, 491, 615 (2017 notes of treatment, lab work, and office visits); pp. 479, 579, 585, 592, 599, 608, and 645 (2018 notes of treatment, lab work, and office visits); p. 570 (2019 office visit note).
[63] AR p. 473.
[64] AR p. 465.

### B. The ALJ Adequately Developed the Record

The ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits."[65] When the ALJ fails in that duty, his or her "decision is not substantially justified."[66] While Plaintiff correctly notes that the ALJ's function is "not to merely sit and listen" or "process cases on an administrative assembly line,"[67] the ALJ has no "duty to become the claimant's advocate."[68] Further, the regulations "clearly explain[] that the burden to obtain information is on the claimant."[69] Likewise, the burden to "demonstrate a disability is always on the claimant."[70] "If the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence."[71] Because substantial evidence supports the ALJ's decision, as shown above, Plaintiff's arguments about the ALJ's failure to exercise her discretion to obtain a CE, and other complaints about lack of development of the record, necessarily fail. Additionally, even if there was a lack of record development attributable to error by the ALJ, Plaintiff has not established that any additional information would have changed the outcome of the decision, *i.e.*, there was no prejudice.

### 1. ALJ Did Not Err in Failing to Request a CE

The Commissioner can request a CE if a claimant's medical sources "cannot or will not give us sufficient medical evidence about [her] impairment for us to determine whether [she] is

---

[65] *Boyd*, 239 F.3d at 708, *citing Newton*, 209 F.3d at 458 (quoting *Ripley*, 67 F.3d at 557).
[66] *Id*.
[67] *See* R. Doc. 19, p. 2. *See also Kane v. Heckler*, 731 F.2d 1216, 1219-1220 (5th Cir. 1984) (explaining that the ALJ's duty to develop a full and fair record only rises to a "special duty" requiring the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" when the claimant in unrepresented); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (same); *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986); *Reid v. Commissioner of Social Sec. Admin.*, No. 19-742, 2021 WL 1227872, at * 4 (M.D. La. Mar. 31, 2021) (same).
[68] *See Martin v. U.S. Commissioner, Social Sec. Admin.*, No. 17-1459, 2018 WL 3626615, at *9 (W.D. La. July 11, 2018) (stating, "[T]he ALJ does not have a duty to advocate on the part of an unrepresented claimant. Therefore, the ALJ was not required to question the vocational expert as though she were representing the claimant at the hearing." (citations omitted)); *Winston v. Commissioner, Social Sec. Admin.*, No. 07-134, 2008 WL 4412233, at *7 (E.D. Tex. Sept. 23, 2008) (citations omitted).
[69] *Winston*, 2008 WL 4412233, at *7.
[70] *Id*.
[71] *Id.*, *citing Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) and 20 C.F.R. § 404.1516.

disabled."[72] The decision to request a CE is made on an individual case basis.[73] Pursuant to 20 C.F.R. §404.1519a, in general, the Commissioner or the ALJ may decide to purchase a CE "if we cannot get the information we need from your medical sources." Moreover, "[b]efore purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file." Furthermore, "[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim…."[74] *See also* 20 C.F.R. § 404.1520b, providing that, "if evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency," which could involve the Commissioner re-contacting a claimant's medical source, requesting additional existing evidence, or asking the claimant to undergo a consultative examination.[75]

Circuit authority also recognizes that "the ALJ has the discretion to order a consultative examination."[76] The ALJ's duty in developing the record may include ordering a consultative

---

[72] *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, **we may** ask you to have one or more physical or mental examinations or tests. We will pay for these examinations….") (emphasis added). *See also* 20 C.F.R. § 404.1519: "A consultative examination is a physical or mental examination or test purchased for you at our request and expense from a treating source or another medical source, including a pediatrician when appropriate. The decision to purchase a consultative examination will be made on an individual case basis in accordance with the provisions of §§ 404.1519a through 404.1519f. Selection of the source for the examination will be consistent with the provisions of § 404.1503a and §§ 404.1519g through 404.1519j. **The rules and procedures for requesting consultative examinations set forth in §§ 404.1519a and 404.1519b are applicable at the reconsideration and hearing levels of review**, as well as the initial level of determination." (emphasis added)
[73] *Id*.
[74] 20 C.F.R. § 404.1519a(b).
[75] 20 C.F.R. § 404.1520b(b)(2).
[76] *Sterling v. Commissioner Social Sec. Admin.,* No. 06-1868, 2008 WL 594503, at *6 (W.D. La. Feb. 3, 2008) (citations omitted); *Saenz v. Berryhill,* No. 18-156, 2019 WL 4061551, at *13 (S.D. Tex. July 15, 2019), *report and recommendation adopted sub nom., Saenz v. Saul,* No. 18-00156, 2019 WL 4055001 (S.D. Tex. Aug. 28, 2019) ("The decision to order a consultative exam, however, is discretionary. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Full development 'does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability

exam;[77] however, "[w]hen evidence in the record supports a conclusion that appellant is not disabled, a consultative exam is not necessary."[78]

As the foregoing reflects, the Commissioner is not required to request a CE, re-contact any of Plaintiff's medical providers, or obtain a medical expert's testimony.[79] In any individual case, the ALJ may exercise discretion and request one *if* she cannot obtain the information needed from a claimant's medical sources or from the existing medical evidence, or *if* there is an unresolvable inconsistency in the evidence or an insufficiency of evidence that prohibits a determination of the claims. In this case, because the ALJ was able to assess Plaintiff's RFC considering her impairments based on the existing medical evidence and Plaintiff's testimony, it was not error for the ALJ to decline to exercise discretion to obtain a CE.[80]

### 2. Plaintiff's Other Arguments About Lack of Development of the Record Lack Merit

While Plaintiff relies on the fact that "the prior Administration determination found insufficient evidence to evaluate the claim"[81] to further support her argument that the ALJ did not have sufficient evidence to support her decision, this argument ignores that it is Plaintiff's burden

---

decision.' *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original); *Jones v. Bowen*, 829 F.2d 524, 526 (same)."). *See also Mayfield,* 2018 WL 4208089, at *4 (same).
[77] *Isbell v. Colvin,* No. 14-006-C, 2015 WL 1208122, at *3 (N.D. Tex. Mar. 16, 2015) *citing Pearson v. Bowen,* 866 F.2d 809, 812 (5th Cir. 1989) (other citations omitted).
[78] *Isbell,* 2015 WL 1208122, at *3 *citing Turner,* 563 F.2d at 671. *See Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir. 1989) (*citing Jones,* 829 F.2d at 526 ("The decision to require such an examination is within the discretion of the ALJ.")).
[79] *Macias v. Astrue,* No. 408-3681, 2010 WL 376268, at *6 (S.D. Tex. Jan. 26, 2010) (*citing Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989) (An ALJ is not required to consult a medical expert for evaluation of mental RFC evidence, even in cases in which an expert has been consulted regarding physical limitations)); *Dominguez v. Astrue,* 286 F. App'x 182, 186 (5th Cir. 2008) ("…the ALJ was not required to obtain medical expert testimony to determine whether his alcohol use was disabling; the use and consideration of medical expert testimony is solely within the discretion of the ALJ.") (citations omitted); *White v. Social Sec. Admin.,* 129 F. App'x 905, 906 (5th Cir. 2005) ("…the record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.") (*citing Ford v. Secretary of Health & Human Servs.,* 659 F.2d 66, 69 (5th Cir. 1981)).
[80] *See Sterling*, 2008 WL 594503, at *6 (holding that the plaintiff failed to demonstrate that a CE was required in order for the ALJ to make his disability determination when the record contained medical records that discussed the plaintiff's impairments and provided sufficient information regarding the plaintiff's condition, and noting: "Sterling has pointed to no evidence that would have been adduced that could have changed the result….").
[81] R. Doc. 16, p. 6.

to establish that she is disabled and ignores that the Administration determination noted that the evidence presented by Plaintiff *at that time* "did not support a finding of disability."[82] Although the Administration determination stated, "We needed more information about your daily functioning and work history" (to which requests Plaintiff failed to respond),[83] Plaintiff testified at the hearing before the ALJ and was able to provide additional information, which the ALJ took into account.[84] Also, there are medical records relating to medical visits that occurred after the Administration determination, which the ALJ took into account.[85] The ALJ based her determination of the limiting effects of Plaintiff's impairments on the medical evidence of record and Plaintiff's testimony at the hearing, and thus provided a sufficient evidentiary basis for the conclusions in the decision, notwithstanding the original Administration determination that there was insufficient information.[86]

Plaintiff also argues that the ALJ failed to develop the record because while the ALJ "stated that the record did not show physical therapy records," there were references to possible physical

---

[82] AR pp. 64, 71.
[83] *Id.*
[84] *Ripley,* 67 F.3d at 557 ("the absence of [a medical source] statement, [] does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."). *See also Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005).
[85] *See, e.g.,* AR pp. 579, 585, 592, 599, and 645 (post-March 2018 notes of treatment, lab work, and office visits); p. 570 (2019 office visit note). *See also* AR p. 530 (March 8, 2019 letter from Plaintiff's counsel transmitting 38 pages of additional medical records to the ALJ, which relate to medical visits occurring between May 8, 2018 and January 7, 2019—*i.e.*, after the Administration determination but before the ALJ hearing and decision).
[86] Indeed, this Court and others have rejected similar arguments to the one Plaintiff is advancing here. *See Swan v. Colvin*, No. 15-60, 2016 WL 5429669, at *15 (M.D. La. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 5478001 (M.D. La. Sep. 27, 2016) (finding that substantial evidence supported the ALJ's opinion despite a state agency consultant stating that the record contained "insufficient evidence [to] evaluate the claim"); *Page v. Saul*, No. 19-4435, 2020 WL 4003641, at * (S.D. Tex. July 15, 2020) (rejecting claimant's argument that because a "state agency consultant found there was insufficient evidence to evaluate [claimant]…the ALJ must have also had insufficient evidence" for several reasons, including (1) "[n]o precedent says the ALJ loses his authority to determine a claimant's RFC based on the available evidence simply because a consulting physician believes the evidence is insufficient to evaluate the claimant's limitations," (2) an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and (3) "consulting physician did not have benefit of considering [claimant's] hearing testimony, which provided critical evidence in the ALJ's evaluation of her functional limitations," and finding (1) that the ALJ did not fail to develop the record and (2) that substantial evidence supported the ALJ's decision). Here, the ALJ determined that there was sufficient evidence in the record to find Plaintiff not disabled, and substantial evidence supports that decision, as explained in this Ruling.

therapy appointments, such that it was error by the ALJ to fail to clarify whether Plaintiff did, in fact, engage in physical therapy.[87] Similarly to Plaintiff's arguments regarding the consideration of dizziness/vertigo, there was evidence in the record to support the ALJ's decision that Plaintiff's other physical symptoms did not appear to be sufficiently limiting. The ALJ summarized the medical records, which noted, for example, no myalgias, no back or joint pain, no gait disturbance or muscular weakness and normal coordination, normal range of motion and the fact that, in addition to no physical therapy, there were also no "radiographs, MRIs, CT scans, or other diagnostic images," nor was there evidence of epidural steroidal injections, medial branch blocks, radiofrequency nerve abalations, or surgical recommendations.[88] This supports the ALJ's determination that Plaintiff's physical impairments are not as severe and limiting as Plaintiff testified because there was a lack of objective evidence to support Plaintiff's subjective claims. Further, neither Plaintiff nor her representative raised the issue of lack of physical therapy records, to the extent they exist, at the May 7, 2019 hearing.[89] Indeed, Plaintiff's representative acknowledged during the hearing that she had the "opportunity to review the exhibits" and they were "complete, to the best of her knowledge."[90]

---

[87] R. Doc. 16, p. 11.
[88] AR p. 15.
[89] *See* AR pp. 29-46 (Plaintiff's testimony during examination by representative) and pp. 46-49 (Plaintiff's testimony during examination by ALJ).
[90] AR p. 28. "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Hernandez v. Kijakazi*, No. 20-389, 2021 WL 3046884, at *4 (W.D. Tex. July 19, 2021), *quoting Maes v. Astrue*, 522 F3d 1093, 1097 (10th Cir. 2008). Further, to the extent that Plaintiff has not waived her argument about the lack physical therapy records by failing to request that the record be held open and/or failure to object during the hearing, Plaintiff's argument misses the point. Plaintiff has never affirmatively alleged that she attended physical therapy, nor that physical therapy records exist. *See, generally*, AR pp. 22-53; R. Doc. 16; R. Doc. 19. Plaintiff has not been, and cannot be, prejudiced by the ALJ's failure to consider treatment that did not occur or physical therapy records that do not exist.

### 3. Plaintiff Has Not Established Prejudice Based on Alleged Lack of Record Development

Additionally, Plaintiff has not shown that she was prejudiced by the failure to obtain a CE or any other purported lack of record development.[91] "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."[92] Put another way, Plaintiff "must show that [she] could and would have adduced evidence that might have altered the result."[93] Plaintiff has not shown the existence of any evidence that might have altered the result. Rather than producing or identifying such evidence, Plaintiff merely suggests that a "different result is very conceivable" here because the ALJ erred in relying on her own findings without ordering a medical opinion on functionality.[94] As noted above, substantial evidence supports the ALJ's findings. Additionally, "[s]uggesting that evidence might be obtained which may show an inability to perform a limited range of light work is insufficient to establish prejudice."[95] Accordingly, even if the ALJ somehow erred by not ordering a CE or otherwise developing the record, Plaintiff has not shown that she was prejudiced by this error and therefore she is not entitled to reversal.[96]

## V. CONCLUSION

The ALJ's findings must be affirmed so long as they are supported by substantial evidence, *i.e.*, more than a mere scintilla.[97] Even if there may be evidence to the contrary, and even if this

---

[91] *Saenz,* 2019 WL 4061551, *13-14, *citing Connie G. v. Berryhill,* No. 3:17-03342-M (BT), 2019 WL 1294441, at *2 (N.D. Tex. Mar. 21, 2019) (*citing Jones v. Astrue,* 691 F.3d 730, 734 (5th Cir. 2012)).
[92] *Saenz,* 2019 WL 4061551, at *14, *citing Ripley,* 67 F.3d at 557, n. 22 (*citing Kane,* 731 F.2d at 1220).
[93] *Saenz,* 2019 WL 4061551, at *14, *citing Brock,* 84 F.3d at 728 (*citing Kane,* 731 F.2d at 1220).
[94] R. Doc. 16, pp. 6-11.
[95] *Saenz,* 2019 WL 4061551, at *14, *citing Brock,* 84 F.3d at 728-29 (noting that a claimant "must show that [she] could and would have adduced evidence that might have altered the result.").
[96] *Saenz,* 2019 WL 4061551, at *14, *citing Brock,* 84 F.3d at 728-29.
[97] *See Reid,* 2019 WL 6970763, at *18, n. 197 ("In his response, Plaintiff argues that the ALJ ignored certain evidence and discussed only the evidence favorable to his determination. The court reminds Plaintiff that the ALJ is not required to discuss every single piece of evidence…. *See Giles,* 433 F. App'x at 251 ('[T]here will always be some evidence

Court may disagree with the ALJ's decision, the ALJ's findings cannot be disturbed if they are supported by substantial evidence.[98] Here, the ALJ considered the evidence, explained her evaluation of that evidence, and her findings are based on the proper legal standards and are supported by substantial evidence in the record, as explained above. As the record supports the finding that Plaintiff is not disabled,

**IT IS ORDERED THAT,** under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security is **AFFIRMED,** and this action is **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on September 10, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record[.]')….").

[98] *See Reid,* 2019 WL 6970763, at *18 ("In support of his decision, the ALJ cited more than a scintilla of evidence. No matter how much evidence exists to the contrary, a decision supported by substantial evidence should not be disturbed. See 42 U.S.C. § 405(g)."). *See also Newton,* 209 F.3d at 452 (in applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision).